Application of Glenn J. SHARPE For Reinstatement To Membership In the Oklahoma Bar Association.

S.C.B.D. Nos. 2239, 2275.

Supreme Court of Oklahoma.

June 7, 1972.

James F. Howell, Johns, Howell & Webber, Midwest City, for applicant.

Paul M. Vassar, Gen. Counsel, Oklahoma Bar Assn., Oklahoma City, for respondent.

IRWIN, Justice:

Glenn J. Sharpe, Petitioner, filed his Application for Reinstatement to the practice of law in Oklahoma pursuant to Article X, Sec. 18, of the Rules Creating and Controlling the Oklahoma Bar Association. 5 O. S.1971, Chapter 1, Appendix 1. Pursuant to Sec. 18(g) of the Rules, the application was referred to the General Counsel for the Oklahoma Bar Association for complete investigation. The General Counsel made an investigation, conducted a hearing and recommended in his Report to the Board of Governors of the Oklahoma Bar Association that Petitioner be reinstated.

The Board of Governors, after due consideration and deliberation, voted to deny Petitioner's Application for Reinstatement. Seven members of the Board voted against reinstatement and three members voted for reinstatement. The Report and Recommendations of the Board of Governors and a transcript of the proceedings have been filed in this Court. In its Findings and Recommendations, the Board of Governors stated:

"* * * the Board of Governors of the Oklahoma Bar Association finds that the applicant, Glenn J. Sharpe, (1) has not undergone rehabilitation during the period of his suspension, and that (2) he has not engaged in any unauthorized practice of law during the period of suspension, and that (3) he does possess the competency and learning in the law required for admission to practice law in the State of Oklahoma, and (4) he does not possess good moral character which would entitle him to be admitted to the Oklahoma Bar Association; and the Board respectfully recommends that the Court enter its order denying the application of Glenn J. Sharpe for reinstatement to the practice of law in Oklahoma."

The background forming the grounds for Petitioner's suspension from the practice of law will be summarized briefly. Petitioner was elected to the office of county judge and assumed that office in January, 1965; and was elected for a second term beginning in January, 1967. In May, 1968, a petition was filed in the Court on the Judiciary, Trial Division, by the Oklahoma Bar Association, seeking the removal of Petitioner from office on the grounds that Petitioner had improperly received fees for the issuance of waiver orders which authorized the issuance of marriage licenses. A trial was conducted and the Trial Division of the Court on the Judiciary removed Petitioner from office and further ordered that he be "disqualified to hold any public office of honor, trust or profit in the State of Oklahoma for a period of three years".

On appeal to the Appellate Division of the Court on the Judiciary, that Court modified the judgment of the Trial Division and ordered that Petitioner "shall be disqualified to hold any judicial office within this State for a period of three years". See Sharpe v. State ex rel. Oklahoma Bar Association (1968), 448 P.2d 301.

In June, 1970, this Court suspended Petitioner from the practice of law in Oklahoma for a period of one year. This suspension, in part, was predicated on Petitioner's activities as a judge and for which he was removed from office and disquali-

fied to hold a judicial office in this State for three years. Also, in June, 1971, Petitioner was suspended for a period of ninety days for activities unrelated to the case in which he was suspended for one year.

The record discloses that in July, 1970, Petitioner was employed in a trust department of a National Bank in Dallas, Texas, as an administrative assistant. A vice-president and trust officer of that bank testified that he had become well acquainted with Petitioner; that he has the highest type of character and a great deal of ambition and enthusiasm; that he knew of his past difficulties; and that he would highly recommend his reinstatement.

One of Petitioner's co-workers at the bank testified that he had been a house guest of Petitioner; that he had a high degree of moral character and that he would vouch for him in any way; that he had unquestionable integrity; and that he saw no reason why he should not be reinstated to the practice of law and that he would recommend his reinstatement without reservation. This witness was familiar with Petitioner's past difficulties and stated that he took this into consideration in forming his opinion.

Another co-worker of Petitioner at the National Bank testified that Petitioner's character and reputation were excellent; that he knew of his past difficulties in Oklahoma and that he took this into account in making his evaluation; and that his judgment was not affected by any sympathy or compassion that he might feel towards Petitioner. This witness testified that he had discussed Petitioner's difficulties in Oklahoma with him several times; that he had overcome any trouble that he might have had; and that he had no bitterness whatsoever towards the Courts in Oklahoma.

A Doctor of Divinity, who was the pastor and senior minister of the Church in Texas in which Petitioner was a member, testified that he was personally acquainted with Petitioner and his family; that Petitioner served as director of the eleventh grade Sunday School; that Petitioner had told him of his difficulties in Oklahoma; that to his knowledge, Petitioner's moral character and reputation were excellent and that he would recommend his reinstatement.

The above testimony was submitted by depositions in which the General Counsel for the Oklahoma Bar Association participated.

At the hearing, Petitioner testified that he was born in 1936; that he was married in 1959 and had two children and his wife teaches school; that he served as Assistant County Attorney in Bryan County until he became county judge; that after he was removed as county judge, he was an Assistant District Attorney in Bryan County until his suspension from the practice of law in June 1970; that he became employed in the National Bank at Dallas, Texas in July, 1970; and became involved in his church activities and was superintendent of the eleventh grade Sunday School.

Petitioner was asked "what is your present attitude toward your suspension and the Oklahoma Bar Association and the Court on the Judiciary" and Petitioner responded: "My honest feeling about this is that I'm so remorseful that this ever happened because of the suffering that I've put my family through and suffering that I caused many people and I'm just so sorry that it ever happened and I hold no bitterness or belligerence toward anybody or any court or toward the Bar Association and this was my own fault and I realize it and my attitude now is that I have a lot of making up to do and a lot of proving to do and that's what my life really is dedicated to now; to be an asset to the Bar Association, if I'm re-admitted, and I'm just so sorry it ever happened."

On further inquiry concerning whether he had any bitterness toward any person or any judge or any court, the Petitioner responded: "I'm the type of individual that I cannot tolerate in myself any type of belligerence toward anybody because of any

action that was caused by me. It was my fault and there's no one to blame but myself and I just don't have any bitterness or anything like that toward anybody or the courts or the Bar Association; just none whatsoever."

Petitioner further testified that he accepted full responsibility for his difficulties; that it was his fault and "there's no one to blame but myself."

Another witness testified that he was a teacher and rancher; that his wife had taught school with Petitioner's wife; that Petitioner and his family had visited in his home; and that Petitioner possessed the moral character and integrity to be a member of the Oklahoma Bar Association and that he would recommend his reinstatement.

No witness testified against Petitioner and the Report of the investigation made by the General Counsel to the Board of Governors discloses nothing that would be unfavorable to Petitioner.

■ It appears from the above evidence, and there is none to the contrary, that Petitioner has properly conducted himself during his suspension. However, a lawyer who has been suspended for disciplinary reasons from the practice of law is not automatically reinstated on a prima facie showing that he has properly conducted himself since being suspended although there is no evidence to the contrary.

The Rules, (§ 18(h) supra) specify certain things that a suspended lawyer must establish before being reinstated and what shall be considered in evaluating an application for reinstatement. Under this Rule the applicant for reinstatement shall establish affirmatively that he has been rehabilitated and that if his suspension from practice is removed, his conduct will conform to the high standards required of a member of the Bar. The applicant shall present sufficient proof to overcome this Court's former adverse judgment wherein

it ordered his suspension. Reinstatement shall be difficult rather than easy and the burden of proof in all reinstatement proceedings shall be on the applicant. Also, an applicant seeking reinstatement will be required to present stronger proof of his qualifications than one seeking admission for the first time.

The Rules also provide that in evaluating an application for reinstatement, the Board of Governors and this Court shall consider the nature of the offense and the circumstances surrounding the lawyer's suspension and feeling of sympathy toward the applicant must be disregarded.

■ When the Board of Governors has acted on a matter and submits its recommendations to this Court, such recommendations are advisory in character and this Court is not bound by the Board's recommendations. However, the Board's recommendations will be given great weight and this Court will consider all the facts and circumstances revealed by the record in determining the issues presented. State ex rel. Oklahoma Bar Association v. Myers, Okl., 424 P.2d 975.

The record supports the Board's findings that Petitioner has not engaged in any unauthorized practice of law during the periods of his suspension and that he possesses the competency and learning in law required for admission, and we approve such findings. This leaves for our consideration the Board's findings that Petitioner has not undergone rehabilitation during the periods of his suspension and that he does not possess good moral character which would entitle him to be reinstated.

In the June, 1970, proceeding in which Petitioner was suspended for a period of one year, the record in the case wherein Petitioner was removed from office and disqualified from holding a judicial office for a period of three years was submitted into evidence by stipulation of the parties. The Trial Authority in that proceeding

recommended a suspension for one year and we approved that recommendation.

In the June, 1971, proceeding in which Petitioner was suspended for a period of ninety days, the Trial Authority recommended disbarment and this Court modified the recommendation and suspended Petitioner for a period of 90 days. In that case we said that the evidence supporting the complaint left much to be desired in several areas.

■ This Court, may not in this proceeding, fail to consider the nature of the offenses and the circumstances surrounding the suspension of Petitioner from the practice of law in the above proceedings. By the same token, this Court may not fail to consider the record concerning Petitioner's conduct and activities during the period of time he was suspended. Both are factors in evaluating Petitioner's application for reinstatement.

■ We are favorably impressed with the manner in which Petitioner conducted himself during his suspensions. He became employed by a National Bank in its trust department and obtained the respect of his supervisor and co-workers. He and his family became active church members and Petitioner became a superintendent of the eleventh grade Sunday School.

Each of the witnesses who appeared in behalf of Petitioner were aware of his past difficulties and each expressed a high regard for his character and integrity and recommended his reinstatement. No one appeared to refute this testimony and the investigation made by the General Counsel of the Oklahoma Bar Association disclosed nothing that would tend to indicate that Petitioner had not conducted himself properly.

Petitioner is a young man and has the capacity to become a useful member of the legal profession. His testimony affirmatively discloses that he recognizes and appreciates that he alone, was responsible for his conduct, the resulting suspensions and the effect of his conduct upon him, his family and the legal profession.

It is apparent that the Board of Governors in its consideration of Petitioner's application for reinstatement very carefully and conscientiously considered everything relevant in making such determination. Three members of the Board were of the opinion that Petitioner should be reinstated. It is equally apparent that the General Counsel for the Oklahoma Bar Association made a complete investigation before submitting his recommendations to the Board that Petitioner be reinstated. General Counsel also represented the Oklahoma Bar Association in the two previous disciplinary proceedings wherein Petitioner was suspended.

It is evident from the record that divergent views are entertained concerning whether or not Petitioner should be reinstated. We have given great weight to the Report and Recommendations of the Board of Governors, but considering all the facts and circumstances we find: Petitioner has affirmatively established that he has been rehabilitated and if his suspension from practice is removed, his conduct will conform to the high standards required of a member of the Bar; that Petitioner has sustained the burden of proof and has presented sufficient proof to overcome this Court's former adverse judgments wherein it ordered Petitioner's suspensions; and that Petitioner should be reinstated to the practice of law in Oklahoma.

It is therefore ordered that Petitioner, Glenn J. Sharpe, be reinstated to the practice of law in Oklahoma.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, LAVENDER, McINERNEY and BARNES, JJ., concur.

HODGES, J., not participating.