**William J. FRITSCHE, III, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 05PDJ028.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 6, 2005.

## I. *ISSUE*

Readmission after disbarment requires the attorney to prove "rehabilitation" by clear

and convincing evidence. Rehabilitation is demonstrated by an overwhelming change, evidenced by a multitude of factors and requiring positive action beyond fulfilling the technical requirements of C.R.C.P. 251.29(a). Is the People's stipulation to readmission, Petitioner's testimony regarding such a change, as well as Petitioner's demonstrated zeal [1] to once again practice law, sufficient to show rehabilitation?

The Hearing Board finds Petitioner met his burden of proof, and concludes readmission is appropriate in this case.

## II. FINDINGS OF FACT

The Hearing Board finds the following facts established by clear and convincing evidence. Petitioner has taken and subscribed the Oath of Admission, was admitted to the Bar of this Court in 1977, and was registered as an attorney upon the official records of this Court, registration number 08157. The Supreme Court disbarred Petitioner on June 5, 1995, effective July 5, 1995. Petitioner met all the requirements under C.R.C.P. 251.29(a) for readmission and is properly before the Hearing Board on his Petition for Readmission.

Petitioner is a 57 year-old man who grew up in Lima, Ohio, and enjoyed what he described as an "Andy Griffith/Leave it to Beaver" home environment. He attended Marietta College, majored in journalism, and played football. Following his graduation from Marietta College, Petitioner attended Cleveland State Law School and graduated in 1976. Shortly thereafter, he took and passed the Ohio, Colorado, and Hawaii Bar Exams. After practicing law in Hawaii and Denver with other attorneys, Petitioner began practicing law in Denver as a sole practitioner specializing in criminal law. Petitioner practiced 18 years before his disbarment for neglecting one client, abandoning a second client, and failing to account for fees received from the second client.

Petitioner expressed genuine remorse and apologized to the Hearing Board, the Bar, and the citizens of the State of Colorado for the actions leading to his disbarment. Petitioner blames no one but himself for the events leading to his disbarment. The readmission process gave Petitioner an opportunity to acknowledge the wrongfulness of his actions, and he gave the Hearing Board his assurance it will not happen again.

Petitioner described his conduct and the circumstances leading to his disbarment as follows. Petitioner practiced as a successful trial lawyer who felt very confident in his advocacy skills. Successes turned his confidence into cockiness over time. Petitioner became a social user of cocaine, started smoking cigarettes, and began drinking alcohol to excess. This lifestyle weakened him physically, emotionally, and spiritually. Petitioner gained 100 pounds after abandoning his lifelong practice of maintaining a regimen of physical activity, including running, playing basketball, and lifting weights.

In addition to his declining physical and emotional health, Petitioner experienced financial difficulties, in part, due to his use of cocaine, a habit he described as expensive. He also encountered difficulties in his marriage eventually leading to divorce. Petitioner subsequently lost interest in his work, closed himself off from contact with friends and family, and lost focus of legal matters, including the complaints filed against him by the People. Petitioner knew of the available lawyer assistance programs, but chose not to seek help. He instead continued to use cocaine in an effort to "self medicate." Petitioner "lived out life" while ignoring his financial, personal, and legal responsibilities.

Petitioner even ignored certified mail received from the People concerning the matters ultimately leading to his disbarment. He presumed the certified mail must have been bad news since it came from the Office of Attorney Regulation Counsel. Petitioner never opened the envelope. Petitioner eventually received actual notice of his disbarment only after an Aurora Municipal Court judge read about it in the newspaper and

---

**1.** The Hearing Board uses zeal to describe an enthusiastic devotion to the practice of law with the goal of tireless diligence in furtherance of the highest standards of practice and not excessive zeal that often leads to zealotry and fanaticism in the advocacy system.

shared it with Petitioner who appeared at court one day.

Following his disbarment, Petitioner lived in a trailer park beginning in 1997. He described the first two years following his disbarment, 1995–97, as the lowest point in his life. Although Petitioner continued to use cocaine and continued to experience financial difficulties during this time, he did manage to raise his adopted daughter who graduated from high school. Petitioner testified he took better care of his daughter than himself.

Petitioner began turning his life around in 1997. He maintained gainful employment by selling meat door-to-door, and made substantial improvements to his trailer home. Petitioner built a carport, landscaped his yard, and became an avid gardener. In 1999, he decided, at a friend's urging, to join a local health club. Petitioner lost nearly 100 pounds after initiating a workout plan with his friend that included an exercise regimen and change in his diet. Petitioner also "lost interest" in cocaine, and without professional help, stopped using it in 1999. With his new found health and confidence, Petitioner resumed a more active social life. This included dating for the first time since his divorce, as well as renewed contact with his mother and other family members.

In addition to a renewed interest in his appearance and that of his residence, Petitioner began attending and participating in services at the Heritage Christian Center Church on Wednesdays and Sundays beginning in the autumn of 2002. He began studying the Bible daily, and volunteered his time at this church by helping distribute food to the needy. This experience helped Petitioner view his disbarment as a wake up call and an opportunity to change his life.[2]

Petitioner testified to the Hearing Board he stopped using cocaine in 1999, he stopped smoking cigarettes and drinking in 2003, and he now lives a frugal life with few expenses. Petitioner continues to maintain gainful employment and lives in a mobile home park with his fiancée in Steamboat Springs. He also began attending Alcoholics Anonymous ("AA") meetings, which he found helpful in understanding his past problems with substance abuse. However, Petitioner does not believe he currently possesses a drug or alcohol problem.

Petitioner's relationship with his fiancée began in June 2003. Their relationship is close, and Petitioner credits her for the direction and support she gave him in his quest to regain a law license. While Petitioner now lives in Steamboat Springs, he continues to attend church at Concordia Lutheran Church there where he and his fiancée teach Vacation Bible School. They also perform volunteer work at the Steamboat Health and Recreation Center in exchange for their swim and fitness memberships.

In May 2005, Petitioner volunteered at the Public Defender's Office, but the office could not give him much work. Petitioner subsequently provided *pro bono* legal research and writing for an attorney affiliated with the Alternative Defense Counsel ("ADC") program. Petitioner worked hard and earned the praise and respect of Ron Smith, an ADC from Steamboat Springs. In his letter to the Court (Exhibit Q), Mr. Smith states Petitioner "showed true diligence and commitment, preparing a variety of motions that were both well-researched and well-written. I personally would not hesitate to recommend him and would strongly support his efforts to seek readmission to the Bar of Colorado."

On May 10, 2005, by agreement with the People, Petitioner submitted to an independent psychological examination. Charles Hazlehurst, Ph.D., ABPP, performed the examination. Following the examination, Dr. Hazlehurst wrote a report dated May 17, 2005, and sent it to Mr. Mortimer, counsel for the People (Exhibit P). In his report, Dr. Hazlehurst concludes Petitioner made a "good recovery" from his use of cocaine, suffers from no mental health or substance disorder, and sees no reason to preclude Petitioner from being readmitted to the Bar. Nevertheless, Dr. Hazlehurst's recommends

2. Petitioner's mother gave him a book entitled "How to Get it Right After You Have Gotten it Wrong" following his disbarment. The book sat on a bookshelf for years before he read it. After reading it, Petitioner began in earnest to make the changes discussed above.

Petitioner continue to attend AA meetings for the first year following readmission for the purpose of providing additional support in abstaining from alcohol and cocaine.

The Parties stipulate Petitioner sat for the Colorado Bar Examination in February 2004 and received a passing score of 281. Petitioner also sat for the MPRE in August 2004, and received a passing score of 106, then sat for the MPRE in November 2004, and passed with a score of 127. Petitioner completed the CLE course on professional ethics in Denver, Colorado, on July 30, 2004.

The People investigated the merits of Petitioner's Petition. Following an investigation, they stipulated to Petitioner's recognition of the seriousness of his behavior leading to disbarment, his full cooperation with the People's investigation into the merits of his petition, his full rehabilitation and his demonstrated candor, sincerity, state of mind, character, stable personal life, and participation in community service, all of which evidence the requisite rehabilitation necessary for readmission to the bar.[3] Petitioner has no prior discipline.

### III. CONCLUSIONS OF LAW

A disbarred attorney may not apply for readmission until at least 8 years after the effective date of the order of disbarment. C.R.C.P. 251.29(a). To be eligible for readmission to the Bar, an attorney must file a verified petition with the Presiding Disciplinary Judge and set forth, among other matters, the following:

(3) The facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;

(4) Evidence of compliance with all applicable disciplinary orders and with all provisions of this Chapter regarding actions required of suspended lawyers;

(5) Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension.

C.R.C.P. 251.29(c). A hearing board makes the readmission decision. C.R.C.P. 251.29(e). An attorney may be readmitted to the practice of law upon demonstration, by clear and convincing evidence, that the attorney 1) has the fitness to practice law 2) has taken and successfully completed the written examination for admission to the bar, and 3) is rehabilitated C.R.C.P. 251.29(a) and (d). All three elements must be shown before the hearing board may authorize readmission. The hearing board may also consider the attorney's past disciplinary record. C.R.C.P. 251.29(e). If an attorney is unable to satisfy the burden of proof and the petition for readmission is denied, the attorney may not reapply for a period of two years. C.R.C.P. 251.29(g).

■ The courts have described rehabilitation in different ways. It has been characterized as "the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society." *In re Cason,* 249 Ga. 806, 294 S.E.2d 520, 522 (1982). It has also been defined as "regeneration," denoting an overwhelming change in the applicant's state of mind. *In re Cantrell,* 785 P.2d 312, 314 (Okla.1989). The analysis of rehabilitation should be directed at the professional or moral shortcoming(s) out of which the discipline arose. *Tardiff v. State Bar,* 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980). It is not enough to show that the attorney is doing what is proper; rather, there is a requirement of positive action. *See In re Sharpe,* 499 P.2d 406, 409 (Okla.1972). In *People v. Klein,* 756 P.2d 1013, 1016 (Colo.1988), the Colorado Supreme Court declared the rehabilitation assessment "must include the consideration of numerous factors bearing on the [attorney's]

---

**3.** Petitioner paid restitution in the amount of $944.11 to Shonetta Oats, the wife of his former client, Tony Oats, based upon the Colorado Supreme Court's order of disbarment. The order of disbarment did not require payment of restitution to Harold Dawson, a second client mentioned in the Supreme Court's opinion. In the case of Mr. Dawson, Petitioner had completed his representation of this client but failed to appear for sentencing.

state of mind and ability." [4] These factors include but are not limited to:

1. character;
2. conduct since the imposition of discipline;
3. professional competence;
4. candor and sincerity;
5. recommendations of other witnesses;
6. present business pursuits;
7. personal and community service; and
8. recognition of the seriousness of previous misconduct.

Aside from Petitioner's testimony and exhibits offered in support of his testimony, the People have stipulated that Petitioner has demonstrated that he is rehabilitated specifically citing the factors 1 through 6 listed above.

The Hearing Board finds by clear and convincing evidence that Petitioner is now rehabilitated, has complied with all the applicable rules in the readmission process, and therefore should be reinstated subject to the following conditions. Petitioner shall, as stipulated by the Parties, remain active in an AA or other 12–Step program of his choosing, attending at least once per month over the first 12 months following readmission. Petitioner shall also submit to a practice monitor program for a period of one year following his readmission beginning upon Petitioner's actual commencement of practicing law. The People shall approve and set forth the specific terms and conditions of the practice monitor program, including the extent and frequency of monitoring. While the Hearing Board finds Petitioner established rehabilitation by clear and convincing evidence, the Hearing Board's primary concern is protection of the public. Therefore, the Hearing Board deems these terms and conditions necessary for Petitioner's successful transition back into the practice of law. The Hearing Board also urges Respondent to continue to be mindful of the events that led to his disbarment and rehabilitation.

The Hearing Board commends Petitioner for the zeal he demonstrated in these proceedings, and trusts he will maintain his enthusiasm and respect for the practice of law in the future. The Hearing Board also commends Petitioner for his candor concerning his prior cocaine and alcohol usage, as well as his struggles with symptoms of depression. Neither the People nor the Court knew of these underlying issues before Petitioner's voluntary disclosure to the People during his application for readmission. Petitioner's honesty about, and desire to overcome, these problems speak to his integrity, and the good faith he brought to these proceedings.

## IV.  ORDER

It is therefore ORDERED:

1. The Verified Petition for Readmission is GRANTED. Petitioner William J. Fritsche, III, Registration Number 08157, shall be readmitted to the practice of law.

2. Petitioner is ORDERED to pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order, and Petitioner may submit a response within ten (10) days thereafter.

---

4. While this case interpreted the previous rule, C.R.C.P. 241.22, it looks to the ABA factors for determining rehabilitation and provides valuable guidance in this area.