David M. **DOERING**, Petitioner

v.

The **PEOPLE** of the State of Colorado, Respondent.

No. 06PDJ083.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Feb. 29, 2008.

On June 12 and 18, 2007, a Hearing Board composed of SHEILA K. HYATT and WENDY S. SHINN, both members of the bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), conducted a Reinstatement Hearing pursuant to C.R.C.P. 251.29(c) and 251.18.[1] Gary M. Jackson represented David M. Doering ("Petitioner") and Charles E. Mortimer, Jr. represented the Office of Attorney Regulation Counsel ("the People"). The Hearing Board now issues the following Opinion and Order Re: Reinstatement Pursuant to C.R.C.P. 251.29(b).

## OPINION AND ORDER RE: RE-INSTATEMENT PURSUANT TO C.R.C.P. 251.29(b)

### I. *ISSUE*

An attorney seeking reinstatement must prove rehabilitation, compliance with disciplinary orders, and fitness to practice by clear and convincing evidence. Petitioner neglected three clients while suffering from depression, defaulted in the subsequent disciplinary proceedings, and moved to California where he supports himself as a taxi driver. Petitioner is now in good mental health, studying for the California Bar Examination, remorseful for his past neglect, and in substantial compliance with disciplinary orders. Should Petitioner be reinstated?

After considering the evidence presented by Petitioner, the Hearing Board finds clear and convincing evidence of rehabilitation, compliance with disciplinary orders, and fitness to practice, despite the fact it took him nearly five years to begin the process of demonstrating rehabilitation and fitness to practice law.

### *HEARING BOARD DECISION*: ATTORNEY REINSTATED

### II. *PROCEDURAL HISTORY*

A Hearing Board suspended Petitioner from the practice of law for a period of one year and one day, effective October 22, 2001. Petitioner filed his "Verified Petition for Reinstatement" on October 23, 2006. On November 6, 2006, the People filed their "An-

swer to Verified Petition for Reinstatement" and took the position that they were without sufficient information to form a belief as to the truth or falsity of the allegations in the petition. The People also took no position concerning the petition for reinstatement in their trial brief filed on May 30, 2007.

The People offered no evidence during the reinstatement proceedings, but nevertheless argued at the conclusion of Petitioner's case that he should not be reinstated to the practice of law. Petitioner asserts that he has demonstrated clear and convincing of his rehabilitation and fitness to practice law as provided in C.R.C.P. 251.29.

### III. *FINDINGS OF FACT*

The Hearing Board finds the following facts by clear and convincing evidence. Petitioner has taken and subscribed the Oath of Admission, was admitted to the Bar of the Colorado Supreme Court on October 17, 1977, and is registered as an attorney upon the official records, Attorney Registration No. 08258. While Petitioner's license to practice law is currently suspended, he nevertheless is subject to the jurisdiction of the Colorado Supreme Court and the PDJ in these proceedings.

### *Background*

Petitioner attended New York University, Washington Square College, where he earned undergraduate and masters degrees in political science and served as student government president before graduating in 1972. Petitioner later attended Boston University School of Law where he graduated in 1976. As a law student, Petitioner participated on the national moot court team. Respondent took and passed the Colorado Bar Examination in 1977, and held his license for twenty-four years before his suspension in 2001.

From 1977 to 1980, Petitioner worked as a staff attorney with the Legislative Drafting Office where he helped draft legislative proposals. While working with the legislature, Governor Richard Lamm appointed Petition-

---

1. The PDJ also continued a portion of the hearing at the request of Petitioner until December 18, 2007. The parties appeared by telephone for this portion of the hearing.

er to the Air Quality Commission. From approximately 1980 to 1987, Petitioner engaged in the private practice of law in Denver.

Petitioner closed his law practice in 1987 following his election to the Denver City Council. His peers elected him president of the council during his term and he continued to serve as a Denver City Councilman until 1995. At that point, he ran an unsuccessful campaign for Auditor of the City and County of Denver. This defeat had profound emotional and professional effects on Petitioner.

Following the election, Petitioner was unable to find employment, which eventually led to the foreclosure of his house. During the same period of time, his father suddenly died in Connecticut following a surgery that had been expected to go well. Petitioner had delayed visiting his father before the operation, because he thought it was more important to tend to client matters and because he anticipated visiting him after the surgery. Petitioner fell into a deep depression following his father's death.

After his father's death, Petitioner continued to practice law as a sole practitioner without a staff. But by 2000 he had decided to leave the practice of law and had stopped taking on any new cases. It was during this time frame that Petitioner neglected three clients and came to the attention of the People. This neglect eventually resulted in the sanction of suspension from the practice of law for a period of one year and one day.

### Anderson Matter

The suspension for one year and one day was based upon misconduct in three client matters, all of which occurred at or near the same time. In the first client matter, Petitioner met with his client, Benjamin Anderson, in March 2000 and agreed to represent Mr. Anderson on a substantial construction contract awarded to Mr. Anderson. Mr. Anderson paid Petitioner $300.00 and Petitioner told Mr. Anderson that he would charge $50.00 an hour until he earned the $300.00 and then he would charge an hourly rate of $100.00 an hour. Thereafter, Petitioner met one additional time with Mr. Anderson, but failed to complete work as

promised and failed to answer Mr. Anderson's calls. As a result, Mr. Anderson delayed in meeting with the parties to the contract and encountered problems. Petitioner failed to return Mr. Anderson's $300.00.

### Miles Matter

In July 1999, Alicia Miles retained Petitioner to represent her in a divorce action and paid him $600.00. Petitioner filed the divorce action and served Ms. Miles' husband. Thereafter, over a three-month period of time, Ms. Miles attempted to contact Petitioner, but he never responded. Ms. Miles' husband obtained counsel and the court set a permanent orders hearing. Petitioner failed to notify Ms. Miles of the hearing and when she obtained new counsel, Petitioner failed to promptly withdraw and return her file.

### Jones Matter

On March 6, 2000, Mary Jones retained Petitioner, paid him $1,000.00 to represent her in a "legal matter," and tendered documents related to the matter. The following month, Ms. Jones asked Petitioner for an "accounting" and when he did not answer her, she hired a new attorney. Petitioner withdrew from her case, but did not return the $1,000.00 retainer.

### Disciplinary Proceedings

On February 2, 2001, the People filed a complaint against Petitioner for the three client matters discussed above. Petitioner failed to answer the complaint and the PDJ subsequently entered an order of default. Following the entry of default, a hearing board convened, heard the People's evidence, and suspended Petitioner from the practice of law for a period of one year and one day as a sanction, effective October 22, 2001.

In the PDJ's order granting default, the Court concluded Petitioner violated the following rules of professional conduct:

In the Benjamin Anderson matter: Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter); Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness

in representing a client); and Colo. RPC 1.16(d) (upon termination, a lawyer shall take steps to protect a client's interests). In the Alicia Miles matter: Colo. RPC 1.4(a) (failure to communicate); Colo. RPC 1.16(a)(3) (a lawyer shall not represent a client or shall withdraw from representation if the lawyer is discharged); and Colo. RPC 1.16(d) (upon termination, a lawyer shall take steps to protect a client's interests).

In the Mary Jones matter: Colo. RPC 1.15(b) (upon receiving property in which a client or third person has an interest, a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive) and Colo. RPC 1.16(d) (upon termination, a lawyer shall take steps to protect a client's interests).

Petitioner failed to participate in the disciplinary proceedings that led to his suspension. Nevertheless, he communicated with the People and said he never intended to practice law again. Shortly thereafter, Petitioner moved to California and began working as a taxi driver.

Petitioner admits that he left Colorado without addressing the disciplinary proceedings, neglected advising the Office of Attorney Registration of his new address, and essentially "threw up his hands and walked away from it all." He now regrets his failure to deal with these matters and realizes he should have sought help for what he now understands was a serious depressive episode.

### Activities Since Suspension

Since leaving Colorado, Petitioner has resided in San Francisco and has worked as a taxi driver. His supervisor finds him to be reliable, conscientious, and hardworking. He presently works approximately eighty hours a week in an effort to save enough funds to take the California Bar Examination. He also is a part owner of a taxi driving school and teaches approximately 100 students a year at the school. Petitioner often drives a taxi seven days a week.

Petitioner has now paid restitution in the total amount of $1,000.00 plus $586.85 in statutory interest to the Attorneys' Fund for Client Protection in the Jones matter. Petitioner also paid restitution with interest in the Anderson matter. Petitioner is on a plan to pay a back-tax liability of $2571.00, and social security taxes of approximately $10,000.00, exclusive of owed interest. He paid the IRS $637.00 in September 2007, and $295.00 in July, August, September, October, and November 2007.

### Legal Studies

In anticipation of the need to present evidence of his fitness to practice law in these proceedings, Petitioner has purchased and studied materials in preparation for the California Bar Examination. He has also purchased CLE materials and has now completed approximately 121 hours in these materials, including 18 hours of ethics credit. However, he does not have the funds to pay the costs of taking the California Bar Examination at this time. He is currently saving money and plans on taking it when he has the funds to do so.

### Testimony of Professor William Covington

Petitioner researched and prepared a legal memo for Professor Covington of the University of Washington Law School on a telecommunications legal issue. Professor Covington later used that memo in making a presentation to the Washington State Legislature on November 27, 2007. Professor Covington testified that Petitioner produced high quality work; that is, equal in quality to what he would typically pay a law firm to prepare. Professor Covington further testified that he would seek Petitioner's legal assistance in the future, as well as refer Petitioner to his clients should Petitioner be reinstated to the practice of law.

### Psychiatric Report—Dr. Hugh R. Winig[2]

Dr. Winig, a psychiatrist, examined Petitioner three times in September 2006, and again in November 2007. His "firm conclu-

2. The parties stipulated to Dr. Winig's original report dated October 20, 2006, Exhibit 2, and supplemental report dated November 21, 2007, Exhibit H, and Dr. Roberts' report dated April 12, 2007, Exhibit 3.

sion" is that Petitioner no longer suffers from depression. Dr. Winig found that Petitioner suffered symptoms of depression from roughly 1995 to 2004, although he describes this as "a single episode" brought on by: (1) the loss of the auditor election in Denver; (2) the death of his father, with unresolved conflicts in that relationship; and (3) the foreclosure of Petitioner's house. Dr. Winig further noted that Petitioner is "forthright, honest, hardworking, and determined to reestablish his legal credentials in Colorado." Dr. Winig's opines that Petitioner is fit to practice law based upon his examination and psychological testing.

### Psychiatric Report—Dr. Ronald H. Roberts

Dr. Roberts conducted a "comprehensive psychological evaluation" of Petitioner on April 3, 2007.[3] Dr. Roberts obtained an extensive history from Petitioner, conducted psychological testing, and reached the following conclusions:

- The conduct that led to Petitioner's discipline was influenced by his depression.
- Petitioner is now experiencing "mild stress" as a result of "current" stressors in his life.
- Petitioner suffers from no mental disorder that would preclude him from practicing law.
- His current levels of stress would decrease and his quality of life would improve if he were allowed to practice law.

### Petitioner's Testimony

Petitioner testified that he recognizes the seriousness of his misconduct and that he is "horrified" by his neglect of the three client matters addressed above. He now recognizes that he was seriously depressed at the time he left Colorado and that he should have sought professional help at the time. Although he thought he would never practice law again when he left Colorado, he has since discovered that he misses the practice of law and the intellectual challenges it afforded him.

Petitioner testified that he did not find out about his suspension until the spring of 2006. He always assumed that he had been disbarred. When he realized that he had not been disbarred, he initiated his quest to be reinstated to the practice of law. Petitioner believes that had he participated in the regulation process, he might have avoided a suspension. In his evaluation with Dr. Roberts, Petitioner offered that the People had discussed a diversion agreement with him, but that he had declined to engage in such a program because he never intended to practice law again.

Petitioner realized upon completing the research project for Professor Covington that he had not enjoyed anything so much in the last six years. Petitioner testified that if he is reinstated, he will either practice law in California, once he passes California Bar Examination, or he will work as a paralegal. He will not practice as a solo practitioner, but will perform contract work as a paralegal or lawyer in immigration law. He plans to limit himself to 25–30 hours a week.

Petitioner feels remorse for the harm he caused his former clients and now recognizes that he should have sought professional help and support from his friends instead of walking away from his practice and the disciplinary proceedings. Petitioner is not dwelling on the past and is looking to the future. He maintains a support system of friends, exercises to manage stress, and looks forward to again practicing law. Petitioner would like his legacy to be that of a good lawyer who made it through a tough period of his life. Not as a suspended lawyer who drove a taxi.

### IV. LEGAL ANALYSIS

When an attorney has been suspended for longer than one year, the reinstatement process begins with the submission of a verified petition for reinstatement under C.R.C.P. 251.29(c). C.R.C.P. 251.29(c) states, "[a]n attorney who has been suspended for a period longer than one year must file a petition with the Presiding Disciplinary Judge for an order of reinstatement and must prove by clear and convincing evidence that the attorney

---

**3.** Dr. Roberts administered the MMPI–2 and the Rorschach Psycho Diagnosis Test.

has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of this chapter, and is fit to practice law." The petition must set forth, in part:

(3) The facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;

(4) Evidence of compliance with all applicable disciplinary orders and with all provisions of this Chapter regarding actions required of suspended lawyers;

(5) Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension.

C.R.C.P. 251.29(c). A hearing board makes the reinstatement decision. C.R.C.P. 251.29(e). An attorney *may* be reinstated to the practice of law upon demonstration, by clear and convincing evidence, that the attorney (1) has been rehabilitated, (2) has complied with all applicable disciplinary orders and all rules regarding reinstatement, and (3) is fit to practice law. C.R.C.P. 251.29(b) and (d). All three elements must be shown before the hearing board may authorize reinstatement. The hearing board may also consider the attorney's past disciplinary record. C.R.C.P. 251.29(e). If an attorney is unable to satisfy the burden of proof and the petition for reinstatement is denied, the attorney may not reapply for a period of two years. C.R.C.P. 251.29(g).

 The concept of rehabilitation has been described in many different ways. It has been characterized as "the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society." *In re Cason,* 249 Ga. 806, 294 S.E.2d 520, 522 (1982). It has also been defined as "regeneration," denoting an overwhelming change in the applicant's state of mind. *In re Cantrell,* 785 P.2d 312, 314 (Okla.1989). The analysis of rehabilitation

should be directed at the professional or moral shortcoming(s) out of which the discipline arose. *Tardiff v. State Bar,* 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980). It is not enough to show that the attorney is doing what is proper; rather, there is a requirement of positive action. *See In re Sharpe,* 499 P.2d 406, 409 (Okla. 1972). In *People v. Klein,* 756 P.2d 1013, 1016 (Colo.1988), the Colorado Supreme Court declared that the rehabilitation assessment "must include the consideration of numerous factors bearing on the [attorney's] state of mind and ability." [4] These factors include but are not limited to:

- Character;
- Conduct since the imposition of discipline;
- Professional competence;
- Candor and sincerity;
- Recommendations of other witnesses;
- Present business pursuits;
- Personal and community service; and
- Recognition of the seriousness of previous misconduct.

The People argue that Petitioner waited five years before filing his petition, failed to demonstrate that he complied with all rules and orders of the court as provided in C.R.C.P. 251(c), and failed to demonstrate rehabilitation or fitness to practice law. As related specifically to the C.R.C.P. 251.29(c) violations, Petitioner failed to comply with the PDJ's order to pay Mr. Anderson $300.00 within one year of the suspension, failed to notify the Office of Attorney Registration of his change in address, and failed to notify clients of his suspension as provided by C.R.C.P. 251.28(b).

While the People correctly argue that C.R.C.P. 251.29(c) requires that a lawyer suspended for more than a year *must* set forth in his petition that he has that he has complied with all the rules in his petition, the facts demonstrate, albeit late, that Petitioner has effectively complied with the restitution order, had no clients to notify, and now has provided the Office of Attorney Regulation

---

4. While this case interpreted the previous rule, C.R.C.P. 241.22, it looks to the ABA factors for determining rehabilitation and provides valuable guidance in this area.

with his current address. *See* C.R.C.P. 251.28(c), C.R.C.P. 251.29(c)(4), and C.R.C.P. 227(A)(2)(b) (notification of suspension to clients, compliance with all disciplinary rules and orders, and change of address, respectively). In addition, the People argue Petitioner failed to meet his burden of proof as to fitness to practice law and rehabilitation.

█ As to fitness to practice and rehabilitation, the Hearing Board notes that the People stipulated to both expert reports, which clearly establish Petitioner no longer suffers from depression, a significant factor in our determination of rehabilitation and fitness to practice law. Before this mental illness, Petitioner successfully practiced law as a solo practitioner and city council member for over 23 years. Furthermore, he frequently dealt with complex legal in drafting legislation. Now that Petitioner has addressed his depression, as the experts have concluded, there is no medical reason that he should not practice law again.

While Petitioner could have started his quest for reinstatement earlier, the rules allow him five years to do so without the necessity of taking the Colorado Bar Examination.[5] The Hearing Board also recognizes that in this case, it took some soul-searching before Petitioner realized that he truly missed the practice of law. The evidence presented here demonstrates clearly and convincingly that Petitioner is remorseful, forthright, and sincere in acknowledging the injury he caused his former clients. More important, he now understands, after seeking psychiatric treatment, how to deal with depression.

The Hearing Board also considered the People's argument that Petitioner cannot be reinstated as a matter of law because he has failed to comply with all court orders and rules in the disciplinary process in a timely fashion. As noted above, the People argue that Petitioner has "avoided" his responsibilities under the rules by not reporting a change of address to the Office of Attorney Registration, not filing an affidavit demonstrating he has notified clients of his suspension, and not paying $300.00 to Mr. Anderson within one year of his suspension as the PDJ ordered.

While Petitioner admittedly failed to timely abide by these rules, we find the totality of evidence demonstrates he substantially complied with the rules by the conclusion of these reinstatement proceedings. Most important, he is now fully recovered, rehabilitated, and fit to practice law.[6] The Hearing Board finds Petitioner has demonstrated an "overwhelming" change in his state of mind and that he is highly motivated to practice law in a responsible and professional manner.

## V. ORDER

It is therefore ORDERED:

1. The Verified Petition for Reinstatement is **GRANTED.** Petitioner **DAVID M. DOERING,** Attorney Registration No. 08258, **SHALL** be reinstated to the practice of law, effective immediately.

2. Petitioner is **ORDERED** to pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order, and Petitioner may submit a response within ten (10) days thereafter.

---

**5.** *See* C.R.C.P. 251.29(b) ("If the attorney remains suspended for five years or longer, reinstatement shall be conditioned upon certification by the state board of law examiners of the attorney's successful completion ... of the examination for admission to practice law....").

**6.** While Petitioner failed to demonstrate that he notified clients of his suspension, he testified he had none at the time of his suspension. While Petitioner failed to timely notify the Office of Attorney Registration of his address changes, the People now know his address. Petitioner also paid $1,000.00 plus statutory interest in the Jones matter even though it was not ordered.